UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>vs.<br><br>LEON BENZER, et al.,<br><br>             Defendants. | Case NO.: 2:13-cr-00018-JCM-GWF<br><br>**ORDER**<br><br>**Motion to Dissolve Protective Orders (#630, 635)** |

This matter is before the Court on Intervener Las Vegas Review Journal's (hereinafter "Review Journal") Motion to Dissolve Protective Orders (#630, 635), filed on June 9, 2015. The United States filed its Opposition (#684) on June 26, 2015. The Review Journal filed its Reply (#694) on July 2, 2015. The Court conducted a hearing in this matter on August 5, 2015. None of the Defendants have taken a position with respect to the Review Journal's motion.

## BACKGROUND

The indictment in this case alleged that Defendants conspired to take control of condominium homeowners associations ("HOAs") in Southern Nevada and thereby gain control over the HOAs' construction defect claims and steer them to attorneys and construction companies involved in the conspiracy. Numerous individuals were charged in the alleged conspiracy and have pled guilty and been sentenced. This includes the alleged co-mastermind of the conspiracy, Leon Benzer, who was sentenced on August 6, 2015. Four defendants in this case, Keith Gregory, Salvatore Ruvolo, David Ball and Edith Gillespie, proceeded to trial in April 2015, were found guilty and have since been sentenced. These defendants have appealed from their convictions. A fifth defendant in a related case, United States v. Stephanie Liane Markham, Case No. 2:14-cr-

00388-JCM-GWF, was charged with making a false statement to the FBI, perjury, and obstruction of justice. Ms. Markham proceeded to trial in September 2015, was found guilty and is awaiting sentencing.

During the prosecution of these cases, the Government produced voluminous discovery to the Defendants, including, among other things, investigation reports, reports of interviews, search warrant affidavits and returns, and records relating to the various homeowners associations, the election of homeowner association board members, construction defects and repairs, and documents pertaining to individual defendants and other persons allegedly involved in the conspiracy. Some of the documents produced during discovery were admitted as evidence during the trial of Defendants Gregory, Ruvolo, Ball, and Gillespie. Otherwise, with the exception of reports regarding certain proffer sessions between Defendant Leon Benzer and the Government that were filed under seal by Defendant Keith Gregory, discovery documents produced by the Government were not filed with the Court and are not part of the docket in this case or in related cases.[1]

On January 29, 2013, shortly after the indictment in this case was filed and the Defendants entered their not-guilty pleas, counsel for the Government and Defendants entered into a Stipulation and Protective Order which was approved by the Court on January 29, 2013. *See Stipulated Protective Order* (#46). The stipulated protective order provided:

> that this Court issue an Order protecting from disclosure to the public any discovery documents containing the personal identifying information such as social security numbers, drivers license numbers, dates of birth, bank account numbers, bank records, or addresses of participants, witnesses and victims in this case. Such documents shall be referred to herein as "Protected Documents."

*Stipulated Protective Order (#46), pg. 2.*

The order further stated that because many of the documents to be produced by the Government contained personal identifiers, redacting those personal identifiers in the documents

---

[1] On the same date that it filed its motion to dissolve the protective orders, the Review Journal also filed a motion to unseal various sealed entries in the case docket. *See Motion to Unseal (#636).* In deciding that motion, the Court reviewed the sealed entries in the docket and ordered that a number of those entries be unsealed, while ordering that others remain sealed with an explanation as to why continued sealing was appropriate. *See Order (#732).*

prior to production "would prevent the timely disclosure of discovery to defendants." The Government therefore agreed to produce the documents without redacting the personal identifiers subject to the documents being provided only to defendants, their attorneys of record, and the attorneys' paralegals, investigators, experts, and secretaries performing work on behalf of the defendants *Id., pgs. 2-3*, ¶¶ 2-4. The order prohibited disclosure of the Protected Documents to other persons. It did not, however, restrict the use or introduction of Protected Documents as evidence at trial. It further provided that upon conclusion of the case, Defendants' counsel would return the Protected Documents to the Government or would destroy them. *Id., pg. 3*, ¶¶ 5-8.

On May 12, 2014, the counsel for the Government and the Defendants, except for Defendant Gillespie, entered into a second Stipulation and Protective Order which was approved by the Court on May 13, 2014. *See Stipulated Protective Order (#283)*. This order governed the disclosure of "documents relating to sensitive material" that was not otherwise described in the Stipulation and Protective Order. Like the first stipulated protective order, the subject documents were referred to as the "Protected Documents." The order provided that the Government would make the Protected Documents available for inspection by defense counsel at the United States Attorney's office. Defense counsel would not be provided with copies of the documents, but would be allowed to make notes regarding the documents. *Id., pg. 2*, ¶ 2. The order further stated as follows:

> Except as provided below, Defense Counsel, attorneys' paralegals, investigators, experts, and secretaries employed by the attorneys of record and performing on behalf of the defendants, and the Defendant shall not make disclosure of the contents of the Protected Documents to any person who is not part of that defense team (including representatives of the news media), including but not limited to any summary, extract or verbatim account of any portion thereof.

*Stipulated Protective Order (#283), pgs. 2-3*, ¶ 5.

The order stated that a Defendant could request a copy of any Protected Document by filing a request to the court under seal. *Id., pg. 3*, ¶ 9. It further provided that "if any Protected Document or any portion of the Protected Documents are to be filed with the Court at any time, or information within the Protected Documents to be disclosed in such filing, in connection with this matter, or referred to in any pleading filed with the Court, such documents shall be filed with the Clerk of the Court under seal and in sealed envelopes prominently marked with the caption of this case and the

3

1    notation: 'Contains Information Subject to Protective Order.'" *Id.*

2        The Government explained the purpose of *Stipulated Protective Order (#283)* in its

3    opposition to the Review Journal's motion as follows:

> The Second Protective Order protects documents related to an investigation conducted by the Department of Justice's Public Integrity Section regarding allegations involving, among others, personnel of the U.S. Attorney's Office for the District of Nevada as well as other local public figures (collectively, the "PIN File"). This investigation resulted in no criminal charges or disciplinary action concerning any government employee. Nor were any charges brought against any non-government individuals or public figures involved in the investigation. There is a very specific risk of harm and prejudice if the Second Protective Order was dissolved and individuals who had reviewed the PIN File could speak to the press and others about these allegations. The individuals mentioned in the PIN File could face public ridicule and irreparable damage to their reputations on the basis of uncharged and unproven conduct. Indeed, this harm not only satisfies the standard of good cause, but also satisfies the more demanding compelling reason standard required when documents are filed with the court attached to dispositive motions.

*Government's Opposition (#684), pg. 8, lines 6-20.*

During the hearing on this motion, the Government's counsel further stated that the Government made the documents available for inspection by the defendants' counsel out of an abundance of caution.   Government's counsel stated:

> We didn't think they were discoverable in this case. And, in fact, early in the case, one of the defendants moved to compel production of those same documents. I think you actually issued an order saying she couldn't show how it was material to her defense. Judge Mahan adopted that R & R.
>
> However, as the case went on, just to be cautious, we produced them. And we produced them pursuant to that second protective order.
>
> Those decisions went hand in hand together. So, we had a very strong reliance interest in that second protective order. We wouldn't have produced those documents most likely but for that second protective order. And I think by their actions, defense counsel really agreed that those documents were irrelevant, because only two of the charged defendants had defense counsel who came and reviewed those documents, which it's important to note were not provided to defense counsel in produced form, but were instead made available for their inspection pursuant to Rule 16.
>
> So, these – we're talking about documents that aren't even in the possession of defense counsel now. We're talking about documents that are in the possession of the Department of Justice and the FBI.

*Transcript of Proceedings (#771), pg. 24, line 6 to pg. 25, line 9.*

4

With respect to investigation of individuals in the United States Attorney's office, the Government's counsel also stated that not only was no one criminally charged as a result of that investigation, no one was disciplined administratively or in any other fashion for the conduct uncovered in that investigation. *Transcript of Proceedings (#771), pg. 34, lines 8-11.* Government's counsel also stated that the investigation probed "in great detail into their personal lives, personal relationships, romantic relationships." *Id., pg. 34, lines 13-15.*

The Review Journal argues that the Government has failed to establish good cause for the continuation of the protective orders and that the press and the public are entitled to review the documents covered by both orders. It therefore argues that the protective orders should be dissolved.

## DISCUSSION

As discussed above, the Review Journal's motion does not concern documents that were filed under seal or which were introduced into evidence during any hearing or at trial. The motion, instead concerns the public's and press's right of access to pretrial discovery materials, and in the case of the second protective order, documents that were made available for review by defendants' counsel, but not physically provided to them.

"It is well established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News v. U.S. Dist. Court*, 187 F.3d 106, 1103 (9th Cir. 1999). *See also In re Roman Catholic Archbishop of Portland Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) ("As a general rule, the public is permitted 'access to litigation documents and information produced during discovery.'"). This does not mean, however, that the public or the press has a First Amendment or common law right of access to discovery materials equivalent to their presumed right of access to judicial proceedings and judicial documents. As stated in *United States v. Smith*, 985 F.Supp.2d 506, 519-520 (S.D.N.Y. 2013), protective orders relating to discovery are not subject to constitutional or common law scrutiny because discovery, unlike the trial itself is usually conducted in private. *Id.*, citing *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). In *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986), the Eleventh Circuit stated that "[d]iscovery, whether civil or criminal,

is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private." *Anderson* also stated that historically, discovery materials were not available to the public or press. *Id.*, at 1441, citing *Seattle Times v. Rhinehart*, 467 U.S. 20, 32-34, 104 S.Ct. 2199, 2207-08 (1984) that pretrial interrogatories and depositions "'were not open to the public at common law.'"

More recently, the Supreme Court of Washington, in *Tacoma News, Inc. v. Cayce*, 256 P.3d 1179, 1188 (Wash. 2010), stated that "[i]n general, courts have found no traditional right of access to pretrial discovery information or documents that are never introduced into the case[,]" and that "[n]umerous courts have reached the same conclusion under the First Amendment in both civil and criminal cases." In addition to *United States v. Anderson*, the court cited the following cases:  *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987); *Times Newspapers, Ltd. v. McDonnell Douglas Corp.*, 387 F.Supp. 189, 197 (C.D.Cal. 1974); *Kimberlin v. Quinlan*, 145 F.R.D. 1 (D.D.C. 1992); *Mokhiber v. Davis*, 537 A.2d 1100, 1109 (D.C. 1988); *Amato v. City of Richmond*, 157 F.R.D. 26 (E.D.Va. 1994); *Palm Beach Newspapers, Inc. v. Burk*, 504 So.2d 378 (Fla. 1987); *People v. Pelo*, 384 Ill.App.3d 776, 780-84, 894 N.E.2d 415, (2008); and *State ex rel. Mitsubishi Heavy Indus. Am., Inc. v. Circuit Court*, 2000 WI 16,  233 Wis.2d 1, 12-21, 605 N.W.2d 868. *Id.*, at 1188-89. *See also United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) ("With respect to experience, there is no tradition of access to criminal discovery."); and *State ex rel. Cincinnati Enquirer v. Sage*, 31 N.E.3d 616, 623 (Ohio 2015) (same).

The district court in *United States v. Smith* concludes:

> In the end, there is no presumptive right of access to the discovery materials provided in this Case. Thus, "an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Seattle Times*, 467 U.S. at 33, 104 S.Ct. 2199. Indeed, the Supreme Court has held that "the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *see also Seattle Times*, 467 U.S. at 32, 104 S.Ct. 2199 (noting that "continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations.");

*United States v. O'Keefe*, No. 06-CR-249, 2007 WL 1239204, at *2 (D.D.C. April 27, 2009) ("Protective orders in criminal cases are not uncommon. . . .").

985 F.Supp.2d at 520-21.

Although the public and press do not have a common law or First Amendment right of access to pretrial discovery materials equivalent to that with respect to judicial proceedings and judicial documents, an order precluding the parties or other persons from disclosing discovery materials to third persons, the public or the press must be supported by good cause. Rule 16(d)(1) of the Federal Rules of Criminal Procedure provides that "the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The party seeking the protective order bears the burden of showing good cause. *United States v. Smith*, 985 F.Supp.2d at 522, citing *United States v. Carriles*, 654 F.Supp.2d 557, 565-66 (W.D.Tex. 2009); *United States v. Jones*, 2007 WL 4404682, at *2 (E.D.Tenn. 2007); and *United States v. Luchko*, 2006 WL 3060985, at *3 (E.D.Pa. 2006). "Good cause exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.'" *Id.*, at 523, quoting *In re Terrorist Attacks on September 11, 2001,*, 454 F.Supp.2d 220, 222 (S.D.N.Y. 2006). *See also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) ("The party opposing disclosure has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted."). *Smith* states that examining a protective order under the framework of Rule 16(d) does not eliminate the First Amendment as a relevant concern, but instead confines the First Amendment scrutiny to the framework of Rule 16(d)'s good cause requirement. *Id.*, at 523.

While courts generally make a finding of good cause before issuing a protective order, the court need not do so where the parties stipulate to the order. *In re Roman Catholic Archbishop of Portland Oregon,* 661 F.3d 417, 424 (9th Cir 2011). If a party takes steps to release documents subject to a protective order, or, if as in this case, a third person challenges the propriety of the order, then the party opposing disclosure has the burden of establishing good cause to continue the protective order in effect. *Id.* "The central concern in determining whether access should be granted to documents sealed under a protective order is whether that order was relied upon in the decision to produce documents." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d at 1137-38.

7

The first *Stipulated Protective Order (#46)* was entered into by the parties so that the Government could promptly produce "discovery documents containing the personal identifying information such as social security numbers, drivers license numbers, dates of birth, bank account numbers, bank records, or addresses of participants, witnesses and victims in this case." *Id.*, pg. 2, lines 11-14.  Absent the protective order, the Government would have been required to redact personal identifying information in the documents which would have unduly delayed their production.  Additionally, the defendants had or may have had a legitimate interest in obtaining the personal identifying information for purposes of investigation.  Given the victims' and witnesses' privacy interests, as well as the danger of identity theft, protecting their personal identifying information from disclosure to third persons or the public was and still is clearly justified.[2]  The Court, therefore, will not dissolve *Stipulated Protective Order (#46)*, the result of which would be to allow personal identifying information in the documents to be disclosed to third persons, including the news media, without any restriction or supervision by the Court.

*Stipulated Protective Order (#46),* by its terms, does not preclude Defendants or their counsel from disclosing the contents of the Protected Documents, other than the personal identifying information contained therein, or preclude them from providing redacted versions of the documents to the public or the news media.  The Court has not been informed whether any defendant's counsel is willing to prepare and provide redacted versions of the Protected Documents to the news media or to any other third person.  If defendants' counsel were to agree to do so, the Government and the Court would have a legitimate interest in ensuring that personal identifying information is properly redacted before the documents are disseminated.[3]

---

[2] Rule 49.1 of the Federal Rules of Criminal Procedure and Rule 5.2 of the Federal Rules of Civil Procedure restrict the filing of documents containing an individual's social security number, taxpayer-identification number, or date of birth.  The Advisory Committee Notes to both rules state that they implemented the policy adopted by the Judicial Conference to address the privacy concerns resulting from public access to electronic case files.  The same concerns apply to the uncontrolled dissemination of discovery documents containing personal identifying information.

[3] The protective order provides that upon conclusion of the action, defendants' attorneys are required to return the Protected Documents to the Government or to destroy the Protected Documents and certify their destruction to the Government.  Whether counsel for any of the defendants who have not appealed their convictions still possess the

*Stipulated Protective Order (#283)*, by contrast, precludes the defendants and their counsel from disclosing to the public or the news media the contents of the documents that defense counsel were allowed to inspect, but not copy.  The Government argues that good cause exists to continue this protective order in effect because the individuals who were the subject of the investigation "could face public ridicule and irreparable damage to their reputations on the basis of the uncharged and unproven conduct." *Opposition (#684), pg. 8.*  The Government also argues that it strongly relied on the stipulated protective in deciding to make the subject documents available for review by defendants' counsel. *Id.*

The Court finds that good cause supported the issuance of *Stipulated Protective Order (#283)* and supports its continued existence and enforcement.  As counsel for the Government noted during the hearing on this motion, prior to the parties entering in the stipulated protective order, Defendant Gillespie filed a motion to compel production of the Department of Justice's investigation relating to the recusal of the United States Attorney's Office for the District of Nevada in this case.  The Court denied Defendant's Gillespie's motion to compel because she failed to make "a *prima facie* showing of materiality" and did not "state how an alleged leak or the alleged destruction of evidence would be material or relevant to her defense in this case." *Order (#201).* The Government subsequently decided to make those documents, and other documents regarding individuals who were subjects of the underlying conspiracy investigation but who were never charged with any offences, available for inspection by defendant's counsel in order to avoid possible later claims that the Government had not disclosed exculpatory or impeachment information. *See Transcript of Proceedings (#771), pgs. 24, 33-34.* The Government did so, however, in reliance on the protective order.  The Government has made a sufficient showing that disclosure of these documents would potentially cause unfair prejudice to the individuals who were the subjects of the investigation, but as to whom no charges, criminal or administrative, were ever brought.  An order dissolving *Stipulated Protective Order (#283)* would not result in any requirement that the

---

Protected Documents is unknown.  The Court assumes that counsel for the defendants who have appealed their convictions still possess or have access to the Protected Documents.

Government provide the subject documents to the Review Journal or make them otherwise available for inspection by the public. At most, it would permit the defense attorneys who reviewed the documents, or their clients, to disclose and comment on what they observed in the files. As the Government argued in its opposition, the Freedom of Information Act (FOIA) provides an available process through which the news media and the public can obtain access to government records or information for which there is not a legitimate basis for continued confidentiality. This process will also allow the Government and/or the court to protect against disclosure of information that is exempt from disclosure under the Act. Such protection could not be provided, however, if the protective order is dissolved and the attorneys who viewed the documents are given free reign to discuss and comment on their contents.[4]

FOIA exemptions (6) and (7) are potentially applicable to the documents subject to the protective orders in this case. Exemption (6) applies to personnel or medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. Exemption (7) applies to records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a

---

[4] FOIA provides that every government agency, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . ., shall make the records promptly available to any person." 5 U.S.C. §552(a)(3)(A). FOIA "was enacted to facilitate public access to Government documents" and "was designed to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Dep't of State v. Ray,* 502 U.S. 164, 173 (1991). This broad statutory mandate is subject to nine enumerated exemptions. *See* 5 U.S.C. §552(b)(1)-(9). Since FOIA's primary objective is to further public disclosure, the Supreme Court has "insisted that the exemptions be 'given a narrow compass.'" *Milner v. Dep't of Navy,* — U.S. —, 131 S.Ct. 1259, 1265 (2011) (quoting *Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 151 (1989)). Further, FOIA's "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). When an agency's decision to withhold documents or information is challenged, the burden is on the agency to establish the applicability of the claimed exemption. *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989); *See* 5 U.S.C. §552(a)(4)(B). An agency can sustain this burden by submitting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith. *Larson v. Dep't of State,* 565 F.3d 857, 862 (D.C.Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.D.Cir. 1984)). *See also ACLU v. CIA*, 710 F.3d 422, 432 (D.D.Cir. 2013).

fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or (F) could reasonably be expected to endanger the life or physical safety of any individual. *See* 5 U.S.C. § 552(b)(6) and (7).  In opposing the Review Journal's motion to dissolve the protective order, the Government has pointed to the type of information implicated by exemptions (6) and (7)(C) as the principal justifications for continued enforcement of *Stipulated Protective Order (#283)*.

During the hearing, the Court also inquired whether the protective orders would "stand as a bar" to obtaining documents through a FOIA request. *Transcript of Proceedings (#771), pg. 26, lines 19-23*.  Counsel for the Government responded as follows:  "I . . . looked at the protective orders in this case, and they don't have the type of language that would bar a FOIA request.  And I think we put it in our position papers as well that we don't think . . . that a FOIA request would be barred by these protective orders." *Id., pg. 27, lines 10-15*.  In the event that a FOIA request would be interfered with by either protective order, the Court would entertain an appropriate motion to modify the protective order to avoid such interference.

The Court finds that the issuance of *Stipulated Protective Order (#283)* and its continued enforcement is supported by good cause.  The protective order guards against the unrestricted and unwarranted disclosure of investigative information regarding individuals who have never been charged with any criminal offenses and against whom no administrative sanctions were ever imposed.  The unrestricted disclosure of information made available for inspection by defense counsel could result in the disclosure of personal and private information about the individuals who were subjects of the investigation.  The disclosure of such information could also result in public ridicule and irreparable damage to the individuals' reputations on the basis of uncharged and unproven conduct.  The news media and the public have an appropriate avenue to obtain the documents through the Freedom of Information Act, except as to those documents or information that falls within one or more of the exemptions in the Act.  Accordingly,

. . .

**IT IS HEREBY ORDERED** that the Review Journal's Motion to Dissolve Protective Orders (#630, 635) is **denied**, subject to the following clarifications:

1. *Stipulated Protective Order (#46)* does not preclude Defendants or their counsel from disclosing the contents of the Protected Documents subject to that order, other than the personal identifying information contained in those documents. Prior to disclosing or disseminating any Protected Documents covered by *Stipulated Protective Order (#46)*, however, Defendants or their counsel shall notify the Government and provide it with copies of the proposed redactions to ensure that the documents have been properly redacted. In the event that the Government objects to production on the grounds that the redactions are not sufficient, the parties may move the Court for an order authorizing or prohibiting the disclosure of the documents as redacted.

2. *Stipulated Protective Orders (#46)* and *(#283)* are not intended to bar production of any documents by the Government pursuant to a request made under the Freedom of Information Act, and which are not otherwise exempt from disclosure under 5 U.S.C. § 552(b).

DATED this 15th day of December, 2015.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge